How much time would you want to reserve? Your Honor, I'd like to reserve a minute of my time. One minute, okay. Please proceed, Mr. Carr. Jason Carr, appearing on behalf of Appellate Jose Rodriguez. I'm good for urban lexicon of the Nevada and indeed this country. This simple phrase has given rise to a complex tapestry of legal rules that need to be applied, decided whether they apply, and has given rise to what, in my estimation, is a pretty complex issue for this Court to decide. The government wants to reduce this matter to a simple application of Davis, but it is anything but simple. To begin with, we have the confluence here of the law and linguistics, the law and socio-economic science, or lexicon for lack of better words. In other words, I'm good for tonight. Is that statement ambiguous? I would submit that it's not ambiguous. It's a binary statement. It either means yes, I want to talk to you, or no, I do not want to talk to you. It is not, and once again, this is my opinion. Another complication of this case is, what is ambiguity? What does ambiguous mean? And I would submit— The magistrate judge found that it was ambiguous because he couldn't tell which it meant. I must confess, I'm not sure I know exactly what it means, so let's assume for a moment that the statement is ambiguous. What follows from that as a matter of law? Interesting, very good question, Your Honor. The first rule we have to apply is this Court's precedence, which is as articulated in Nelson v. McCarthy in the 1980 case. The precedent of this Court right now is the clarification rule. And when ambiguity is present regarding the invocation of the right to remain silent or the right to counsel, that the arresting officer or the interrogating officer must ask questions only related to resolving the lack of clarity. Now, how do you square that with Davis? Great question. Now, Davis is about, of course, the right to invocation to counsel, so it differs here because we're talking about invocation of the right to remain silent. Suppose we decided that the claim to the right to silence as well as the claim to the right to counsel is the same. Which to do so, this Court would have to overrule prior precedent, and that would come down to whether or not Davis is a supervening authority that mandates that this Court not follow precedent. Suppose we did that. Then let's look at the holding of Davis, which this is another really important point. The holding of Davis is, and I quote, We therefore hold that after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney. So there's a conditioned precedent, which is the initial waiver. We therefore hold that after a knowing and voluntary waiver. So Davis is the initial waiver must be clear and positive and not ambiguous. Is that what you're saying? What I'm saying here is that there's a difference in Davis because Davis is not about the initial waiver. Davis is about invocation after there's been a Miranda waiver, which gets into the question this Court asked a supplemental briefing on. My case is not about a midstream waiver or witness invocation. It's about the initial waiver. Excuse me. You're arguing in your case there never was an initial positive unambiguous waiver, which is what Davis requires. Exactly. Exactly, Your Honor. That's exactly what I'm arguing. So Davis has limited application here because of that nuance, which gets to another question. Does this Court have authority to overrule another three-judge panel when the supervening authority here, the Supreme Court precedent, does not clearly apply to the facts of this case? And I would question, and we get here into issues of the application of precedent here, but I would submit that unless there's a Supreme Court case that clearly applies unequivocally, this three-judge panel, Your Honors, do not have authority to overrule another three-judge panel. But that gets, I'd like to back up again to the other important question I think is present here, is was his statement equivocal? Was it ambiguous? And another issue this Court has to grapple with is how do we inform the inquiry as to what is an ambiguous waiver? What is the objective person's standard? Here we tried to submit evidence to support our conclusion that I'm good for tonight. It's not ambiguous. It's not equivocal. It means I don't want to talk to you. It might be ambiguous what he's referring to. For instance, you have a right to remain silent and you have a right to a lawyer, and we can get you a lawyer to be here while questioning. I'm good for tonight. It might be saying, no, I don't need a lawyer. That's a good point, Your Honor, but I believe if the Court looks at ER 130, that it clarifies that the I'm good for tonight, well, maybe you're right, Your Honor. Well, Gunderson's testimony around 130, the gravamen of it and the magistrate's ruling seemed to be that I'm good for tonight was pertaining to specifically the invocation of the right to remain silent. Do you want to continue talking with me? I'm good for tonight. What does that mean? That is the inquiry. But it is a good question. Maybe it is. It could apply to the right to counsel, but it seems as though this case has been analyzed and the magistrate seemed to center on the fact of it. Well, basically, from your perspective, Davis doesn't apply because that dealt with the situation of requesting counsel after an initial clear waiver of Miranda had occurred. Your argument is that did not occur here. And you also argue that Nelson v. McCarthy controls, and if there's ambiguity, the officer needed to clarify what the defendant meant before he could proceed. Is that your position? Yes, there are three points, and the Court just articulated two of them. The third that I would argue is that Davis doesn't apply because there was not an ambiguity. Davis is a clarification of the rule of what do officers need to do when presented with ambiguity and invocation of rights. The way Judge Smith stated it, I think, very clearly, is whether there was an ambiguity or not, you'd still prevail. If there were an ambiguity, there had not been a clear waiver, which Davis requires. And I guess the rule of this case, in my estimation, would be one of the rules would be that there is a difference in analysis whether we're talking about the initial waiver in Davis. That would be, and that perhaps this Court wants to revisit the Davis question, apply Davis to the invocation of the right to counsel, which is not the law in the circuit right now. But even if that were the case, this would not be the proper vehicle to do it because we aren't talking about the Davis facts here. We're talking about the initial waiver of Miranda rights. Now, I would like to talk briefly about the issue of the poll results, which is another fascinating question, at least in my estimation. How does a district court judge or a magistrate judge inform his analysis as to the objective person's standard? Is it proper for the court to look at, especially in a question of linguistics like we have here, because I don't think anybody would, I don't think the government would stand up here and say that if this person was speaking a foreign language, that the magistrate judge should not look at what, at a language interpretation book, a Spanish-English dictionary, say, if it was Spanish, to determine what the person said. Here we're talking, it's a little less clear here because we're talking about the application of colloquialisms, slang, urban lexicon, but here we're trying to tell the court this is what he meant when he said X. And we're trying to inform the court's determination of what he meant by taking a poll of the local community. And we argue that for a question of regional dialect, for a question of colloquialism, for a question of how people in different socioeconomic classes speak, different racial classes speak, that the court should, indeed can and should, take cognizance of the science of linguistics. And that's all we have. I think your position would be more impressive if your poll had said that 98 percent of the people understand this to mean no. But that's not the way it went. It went slightly more than half did. Well, that seems to, I don't know what that proves. A reasonable officer might be in the 43 percent. It would be better facts for me if it had been more overwhelming majority believe that. But what's interesting is I cited in my opening brief an urban lexicon dictionary, which is a poll nationwide of what the term I'm good for tonight or I'm good means. And the statistics there were overwhelming that that means I want to stay at the current state. In other words, I want to stay at the state of not speaking with you or being subject to interrogation. And I see that my time is up. I have 40 seconds. Very good. We'll give you an extra 15 minutes, seconds, when you come back up. All right. We'll now hear from the government. Mr. Vasquez, I believe. Thank you, Your Honor. One moment, please. Bear with me a little bit. I'm a little bit under the weather, but I'll persevere. You have our empathy. Somewhere we get these twice a year. Sometimes it's spring and the fall, so maybe you've already got rid of your spring cold. I think I've come down with the spring version of this. In any case, I appreciate the opportunity to appear before you today. I am, again, Tim Vasquez, an assistant United States attorney out of the District of Nevada. I'm going to begin with the point that counsel concluded with, and I think he began with that as well, and that is he would have the court believe that the issue here is about linguistics and urban lexicon and those sorts of issues. And I think fundamentally this is where the appellant goes astray, because this is exactly what the Davis court tried to preclude, tried to avoid. But, Mr. Vasquez, with due respect, hasn't your opposing counsel correctly stated that Davis involved a factual situation where the defendant was initially mirandized clearly, unambiguously, then he got farther down the road, changed his mind? Isn't that the situation that they dealt with in Davis? Factually, yes, sir. But in fact that's a little different situation than we have here. We're now talking about the initial mirandization of your client and whether or not the officer understood whether there was an ambiguity. Isn't that really the issue that we initially have to deal with here? Your Honor, I understand the court's question. I'm not sure that there is a legal distinction between which point in time the invocation will be made or when the waiver is made. Well, there's an enormous distinction, isn't there? I mean, the Supreme Court in recent years has changed the application of Miranda and has made it clear that once you've given the Miranda right, which was established by the court, that there are some different takes once you get farther into the proceeding. And that's what they talked about in Davis. This gets back to really almost an ab initio situation of what you're dealing with at the beginning. And if you look at some of the case law, it makes it very clear that the government has a heavy burden to make certain that someone is properly Mirandized here. The burden is on the government. So unless you can help me understand something I'm missing, Davis is a different factual situation, and we don't necessarily take the teaching of Davis that applies in that situation and automatically move it across the spectrum of Miranda warnings. Your Honor, I believe that the Davis holding would apply across the spectrum. And here's why. Because if you go back and you look at Miranda, let me first begin with the observation that in Miranda itself it made no distinction, as counsel would have the court make a distinction, between the right to counsel and the right to remain silent. That is, all these Miranda rights were given equal footing. And similar language can be found. Regardless of when it occurs along the spectrum. The Miranda court said if there's an indication either of a right for an assertion of the right to remain silent or a request for counsel. If there is an indication, questioning must stop at that point, whether it be at the outset or in the middle or towards the end of the. But Miranda never got to those others, did it? That was, of course, the first case. And they just talked about the initial interview in Miranda. They never talked about anything subsequent. Now, there have been scores of cases that have dealt with Miranda and exceptions to Miranda, but, I mean, that's what dicta is, is when you have something that a court has said that doesn't apply to the facts of the situation. So is the government asking us to expand the application of Davis across the board regardless of the facts of the situation? I believe the essence of Davis was that this is to be an objective standard, an objective test, and there's supposed to be clear guidance for a law enforcement officer. There's supposed to be the goal of Davis was a bright line rule that could be objectively applied in the future. So you are saying, you are saying that what the government wants this court to do is to apply the Davis standard across the board based upon whether it's an initial Mirandization or subsequent to that time period? Yes, sir. I think I phrased it differently than the court has, but I would agree with that, that I believe Davis should be applied across the board, because in Miranda, like I said, Miranda didn't make any sort of distinction between a request for counsel or an invocation of a right to silent. And subsequent cases in the Supreme Court and other circuits, as well as this circuit, have made clear that an invocation of a request or a request for counsel is tantamount to an invocation of your Fifth Amendment rights. Questioning stops. So there's no real reason to draw a distinction. Davis then looked at this and realized that guidance and clarification was needed for law enforcement officers going forth in this area. Otherwise, if we were to pursue the appellant's rationale, a law enforcement officer would need to carry, I can't remember the name of the dictionary, but an urban dictionary of slang terms and perhaps can be helpful. Do you believe that Davis overrules Nelson v. McCarthy? Yes, Your Honor, I do. You do? Yes, sir. I believe it's the supervening Supreme Court decision that now controls this area, because I don't believe there's any logical or principled distinction between a request for counsel and an invocation of right to silence. You may be right. That was my initial take. What you've just argued was my initial take on this case. And then the more I got to thinking of it, I thought, well, we haven't exactly decided that yet. And our law, which you can't really say it's been changed unless you talk about the general theory of the Supreme Court these days, it's pretty hard to get to that result, even though that was my initial impression. Your Honor, I may be repeating myself again, but as I read Davis, if we're going to have an objective test, which I think is a fair reading of Davis, regardless of where you're going to apply it in the process, this is to be an objective standard, then you apply that standard to a situation like here, what conclusion do you come to? Well, are we going to make a distinction for right to silence versus request for counsel? You have two hurdles for applying Davis. One is, does Davis apply to right to remain silent as well as right to a lawyer? That's a relatively easy hurdle for you, I think. You can make that argument pretty easily. A much harder one is, does Davis apply to an initial waiver of Miranda rights? And it just didn't deal with it. It said after there's been a waiver and you're into questioning, then something pretty clear has to happen to stop. But it just doesn't speak to the initial waiver, and that seems to me to be the real hurdle you have. And I understand the factual distinction that the Court has drawn, and I can't quarrel with the distinction on the facts, but I think the principle, again, to be extracted from Davis is that this is to be an objective standard. And I believe they even quote other Supreme Court decisions that say that it is, as counsel states, a binary election. Either it is or it isn't. At the initial time, when the first warning is given, there's an absolute right to remain silent if the person wants to. So it's a question of what does the person want after being properly warned. And when you're in the Davis situation, the warning's been given and the person's been waived as rights and the questioning is going on, so you're changing the status quo, which is the questioning, and the Court is saying, well, we're not going to change it until there's, you know, the accused makes himself perfectly clear. But we're not going to change the status quo. The status quo in the beginning is you don't have a right to question and get answers unless there's a waiver of Miranda rights. I think this brings us back to a court to a point the Court made earlier as to what was even said here when you put it in context. That is, the patrolman or rather the park ranger in this case went through the full Miranda set of rights, which includes, of course, you have the right to remain silent, statements that you can be made, the statements that you make can be used against you, and you have a right to counsel. If you can't afford counsel, counsel will be provided for you. After going through that full body of rights, then the question to the defendant is, are you willing to talk to me? The defendant's response was, I'm good for tonight. That's the initial waiver. That's the point in time that the Court wants to address. And when we do that. Kennedy. Do you disagree, then, with the magistrate's finding that it's ambiguous? Well, I think the magistrate made two findings. I think her first and primary finding was that the ranger, Ranger Gunderson, it was reasonable for him in his position and under those circumstances to understand that this was a waiver. And I believe that those findings are factually sound when you look at the context and the circumstances, and that alone would be a basis for affirming the decision below without even reaching the Davis question. Then she went on and continued, and I would submit alternatively, saying that even if I were to agree with the defense and look at their polls and hold that this was ambiguous, that doesn't cut in favor of the defense under Davis, and I believe she correctly applied Davis to this situation, because the principles of Davis apply whether it be request for counsel or invocation of right to silence. I see my time is up. Thank you, Mr. Vasquez. We have just a little bit of time left. Mr. Carr, if you'd like to use it. I'd just like to point out to the Court on ER-29, which is the magistrate's R&R sheet, clearly finds that the statement is ambiguous. And I would submit that this Court, the government would have a better case here if after Mr. Rodriguez said, I'm good for tonight, questioning began and Davis started talking. That would inform the ranger as to whether or not he was waiving his right to Miranda at that time. But that's not what occurred in this case. After he said, I'm good for tonight, Ranger Gunderson walked away and did other things. Sometime later, it's unclear in the record how much later, Reynolds, another ranger comes and starts interrogating our client. So the government does not have in this case the added benefit of being able to say there is a knowing waiver of Miranda at the beginning, based on the context, because he started talking right then. And I'll note also, regarding the waiver versus midstream invocation that this Court has talked about, that it's a burden shifting as a way to look at it. In the beginning, the government has the burden to prove the waiver. Midstream, after the client starts talking, then he has an onus to come forward with an invocation. And that's a critical difference. Thank you for listening to my argument. Thank you, Mr. Carr. Thank you, Mr. Vasquez. The case of United States v. Rodriguez is submitted.
judges: Canby, Thompson, Smith